1 **WO**                                                                                                          SC

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8
David Torrez,                               )   No. CV 10-0116-PHX-MHM (MHB)
9                                           )
           Plaintiff,                       )   **ORDER**
10                                          )
vs.                                         )
11                                          )
Corrections Corp. of America, et al.,       )
12                                          )
           Defendants.                      )
13 _____ )

14          David Torrez and four other inmates confined in the La Palma Corrections Center

15 (LPCC), a Corrections Corporation of America (CCA) facility in Eloy, Arizona, filed a joint

16 *pro se* Civil Rights Complaint by a Prisoner under 28 U.S.C. § 1983, Torrez v. Corrections

17 Corp. of America, No. CV09-2298-PHX-MHM (MHB), doc. 1.[1]  The Court severed the case

18 into individual actions and Torrez, the plaintiff in this case (Plaintiff), filed a First Amended

19 Complaint.  (Doc. 8.)  In an Order filed May 20, 2010, the Court dismissed the First

20 Amended Complaint with leave to amend within 30 days.  (Doc. 8, 18.)  On June 18, 2010,

21 Plaintiff filed a Second Amended Complaint with a motion for extension of time to file the

22 Second Amended Complaint.  (Doc. 24.)  The Court granted Plaintiff's motion for extension

23 of time, which it construed as a motion to deem the Second Amended Complaint timely-filed.

24 (Doc. 25.)  However, on August 9, 2010, judgment was mistakenly entered for failure by

25 Plaintiff to comply with the earlier May 20 Order.  (Doc. 26.)  Plaintiff has filed a motion for

26 reconsideration of the entry of judgment.  (Doc. 27.)  Plaintiff's motion will be granted to the

27 extent that judgment entered August 9, 2010 will be vacated.  The Court will order

28

---

[1] "Doc." refers to the docket number of filings in this case unless otherwise indicated.

Defendants CCA, De Rosa, and Powers to answer Counts I (in part), II (in part), IV (in part), and VI (in part) of the Second Amended Complaint and dismiss the remaining Defendants and claims without prejudice.

**I.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951. But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 611 F.3d 1202, 1202 (9th Cir. 2010).

(9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II.    Second Amended Complaint

Plaintiff alleges eight counts for violation of his federal right: to exercise his religion; to access to the courts; against retaliation; and against employment discrimination. Plaintiff sues CCA and CCA Vice President Lucibeth Mayberry. In addition, Plaintiff sues the following LPCC employees: former Warden Charles De Rosa; former Assistant Wardens Tim Chase and R. Tapia; current Warden James Schomig; Assistant Wardens Chad Miller, Barbara Seidl, and James Young; former Chaplain Muriel Powers; Religious Facilitator Justin Roberts; Programs Supervisor Nicolas Delsordi; and Grievance Co-ordinator Ruth Allridge-Williams. Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

## III.   Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). Further, a "'plaintiff generally must assert his own legal rights and interests, and cannot assert the legal rights or interests of third parties.'" Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 610 (9th Cir. 2005) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

### A.    Conspiracy Allegations

The Second Amended Complaint is replete with assertions that Defendants conspired

to violate Plaintiff's rights.[2] Conclusory allegations of a conspiracy are insufficient to state a claim. See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (explaining the requirements of a conspiracy claim under § 1983); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (a court need not accept as true allegations that are merely conclusory, deductions of fact, or unreasonable inferences), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) (stating that conclusory allegations of conspiracy do not support a § 1983 claim). All of Plaintiff's conspiracy allegations are conclusory and vague. Accordingly, to the extent that Plaintiff asserts a claim for conspiracy against any Defendant, such claim will be dismissed.

### B. Religious Claims

Plaintiff designates Counts I, IV, and V as claims for violation of his federal religious rights.[3] An institutionalized person may bring a claim for violation of his religious rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc – 2000cc-5, and/or the First Amendment. RLUIPA prohibits the government from imposing a substantial burden on the religious exercise of an institutionalized person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1) – (2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or

---

[2] Plaintiff frequently refers to violations of "Plaintiffs'" rights rather than "Plaintiff's" rights. The Court construes those allegations to refer solely to violations of Plaintiff's rights and not to those of other inmates. As noted herein and previously, Plaintiff may not bring an action on behalf of others.

[3] The Court does not consider Plaintiff's religious claims under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb. The United States Supreme Court invalidated RFRA as applied to the states because it "exceeded Congress' remedial powers under the Fourteenth Amendment." Cutter v. Wilkinson, 544 U.S. 709, 715 (2005) (citing City of Boerne v. Flores, 521 U.S. 507, 533-36 (1997)); accord Greene v. Solano County Jail, 513 F.3d 982, 986 n. 3 (9th Cir. 2008). For that reason, relief under RFRA in this action is unavailable.

1  central to, a system of religious belief." 42 U.S.C. § 2000cc-5 – 7. "[A] 'substantial burden'
2  on 'religious exercise' must impose a significantly great restriction or onus upon such
3  exercise." Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005) (quotations omitted).
4  Thus, an institutionalized person's religious exercise is substantially burdened "'where the
5  state . . . denies [an important benefit] because of conduct mandated by religious belief,
6  thereby putting substantial pressure on an adherent to modify his behavior and to violate his
7  belief.'" Id.

8  In addition, "[i]nmates clearly retain protections afforded by the First Amendment,
9  including its directive that no law shall prohibit the free exercise of religion." O'Lone v.
10 Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted).
11 However, free exercise rights are "necessarily limited by the fact of incarceration, and may
12 be curtailed in order to achieve legitimate correctional goals or to maintain prison security."
13 Id. To state a First Amendment free exercise claim, a plaintiff must allege that a defendant
14 substantially burdened his religious practice without a justification reasonably-related to
15 legitimate penological interests. Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008); Warsoldier,
16 418 F.3d at 995 (citing Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S.
17 707, 717-18 (1981) (pressure on exercise must be substantial)); Malik v. Brown, 16 F.3d 330,
18 333 (9th Cir. 1994); Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998). The religious
19 practice or exercise at issue must be rooted in sincerely-held religious belief and not in
20 "'purely secular' philosophical concerns." Malik, 16 F.3d at 333 (internal citation omitted).

21 **1. Counts I and IV**
22 **a. Chase, Tapia, Schomig, Miller, Young, Seidl, & Allridge-Williams**

23 In Counts I and IV, Plaintiff makes only vague and conclusory allegations against
24 Defendants Chase, Tapia, Schomig, Miller, Young, Seidl, and Allridge-Williams. Although
25 *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972),
26 conclusory and vague allegations will not support a cause of action. Ivey v. Board of
27 Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal
28

interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Id. Because Plaintiff makes no non-conclusory allegations against these Defendants in Counts I or IV, these counts will be dismissed as to these Defendants.

### b. Roberts

In Count I, Plaintiff alleges that on November 12, 2009, Roberts refused to allow inmates to enter the chapel to play music and attend a Catholic religious program. He further alleges that his requests for copies of music for choir practice were routinely delayed. In Count IV, Plaintiff alleges he was denied choir practice on one day, referring to his allegations against Roberts in Count I. These allegations do not support that Plaintiff's religious exercise was substantially burdened. At most, Plaintiff alleges a one time lack of access to the chapel and fails to allege facts to support that the delay in receiving copies of music substantially burdened his religious rights. Therefore, Plaintiff's claims against Roberts in Counts I and IV will be dismissed.

### c. Powers

In Count I, Plaintiff in part alleges that: (a) Powers acted "insolently and obstructively" towards Tucson Catholic Diocese members and volunteers, which delayed religious programs and Mass at LPCC; (b) Plaintiff filed a grievance on September 12, 2009 about being denied the sacrament of confession; (c) Powers denied Plaintiff's request to use the chapel for choir practice; and (d) Powers denied him information regarding use of inmate trust funds to buy "religious equipment" or make "donations." Plaintiff fails to allege specific facts in support of allegations (a), (b), (c), and (d), including when, where, and how. As to allegation (b), Plaintiff fails to allege facts to connect the denial of the sacrament of confession to Powers. As to allegations (c) and (d), Plaintiff fails to allege that such denials substantially burdened his religious exercise. For these reasons, these allegations against Powers in Count I will be dismissed.

Count IV in part repeats portions of Count I for which the Court will require a response to the extent stated in Section IV of this Order. Plaintiff otherwise makes only

1 | conclusory assertions against Powers in Count IV.  Those allegations will be dismissed.

2 | **d.  CCA**

3 | In Count I, Plaintiff alleges that CCA contracted with CDCR to provide "work
4 | assignments and religious services," presumably as part of its contract to incarcerate
5 | California inmates.  (Doc. 24 at 3.)  He also asserts that the "CCA Corporate and Facility
6 | Policy" places an impermissible burden on his free exercise rights by failing to make a
7 | reasonable accommodation of his religious needs.  Finally, he alleges that CCA failed to
8 | properly train and supervise staff.  All of Plaintiff's allegations against CCA in Count I are
9 | vague and conclusory.  Accordingly, Count I will be dismissed as to CCA.

10 | In Count IV, Plaintiff alleges that CCA policy prevents Catholic priests from bringing
11 | sacramental wine into LPCC and violates his religious rights.  Plaintiff does not allege this
12 | policy substantially burdens his religious rights, nor does he allege the absence of a
13 | compelling government interest in such prohibition.  Accordingly, Count IV will be
14 | dismissed against CCA.

15 | **2.  Count V**

16 | Plaintiff predicates Count V (in part) on allegations contained in Count II (in part).
17 | In Count II (in part), he alleges that on June 1, 2009, CCA began airing the Trinity
18 | Broadcasting Network (TBN), which Plaintiff describes as the largest Protestant network,
19 | to inmates at LPCC.  CCA does not air the Eternal Television World Network (ETWN),
20 | which Plaintiff describes as a Catholic network.  In Count V, Plaintiff asserts that the lack
21 | of access to ETWN programming by CCA violates his religious rights but he fails to allege
22 | that his religious exercise is substantially burdened by the lack of access to ETWN
23 | broadcasts.  He accordingly fails to state a claim in Count V for violation of RFRA or the
24 | First Amendment.

25 | Plaintiff otherwise makes only vague and conclusory assertions of a conspiracy to
26 | violate his religious rights against "Defendant(s)."  As discussed above, vague and
27 | conclusory allegations are not sufficient to state a claim.  Because Plaintiff fails to state a

28 |

1 claim against any Defendant in Count V, that Count will be dismissed.

### C. Equal Protection

In Count II, Plaintiff alleges violation of his equal protection rights based upon religious discrimination. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; see City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). A state practice that interferes with a fundamental right or that discriminates against a suspect class of individuals is subject to strict scrutiny. Massachusetts Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976); City of Cleburne, 473 U.S. at 441. Absent allegations that he is a member of a suspect class, or that a fundamental right has been violated, a plaintiff must allege facts to support that he has been intentionally treated differently from others who are similarly situated without a reasonable basis therefor. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Conclusory allegations do not suffice. See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265 (1977).

In Count II (in part), Plaintiff alleges violation of equal protection based on: (a) CCA policy that prohibits Catholic priests from bringing sacramental wine into LPCC; (b) being prohibited by Powers from inviting inmates not previously registered as Catholic to Catholic services; and (c) Powers's implementation of a chapel usage policy that discriminated against him and promoted Protestantism. He otherwise asserts that CCA, De Rosa, Powers, Chase, Tapia, Schomig, Miller, Seidl, Mayberry, and Young enforced CCA policies that violated his right to equal protection.

Plaintiff does not allege facts to support that any religious leader is permitted to bring wine or other intoxicants into LPCC for religious purposes. Plaintiff also fails to allege facts to support that Powers allowed inmates of other faiths to invite non-registered inmates of their faiths to attend their religion's services. Additionally, Plaintiff fails to allege *facts* to

1  support that Powers implemented a chapel usage policy that discriminated against him based
2  on his Catholic faith or to support that she promoted Protestantism.  Therefore, allegations
3  (a), (b), and (c) are insufficient to state an equal protection claim.  Except as specifically
4  discussed in Section IV of this Order, Plaintiff also fails to allege facts to support that CCA,
5  De Rosa, Chase, Powers, Tapia, Schomig, Miller, Seidl, Mayberry, and Young violated his
6  right to equal protection.  Accordingly, these portions of Count II will be dismissed.

### D.     Access to the Courts

In Count III, Plaintiff alleges denial of access to the courts.  The right of meaningful access to the courts prohibits state officials from actively interfering with an inmate's attempt to prepare or file legal documents.  Lewis v. Casey, 518 U.S. 343, 350 (1996).  However, that right only encompasses the ability to bring petitions or complaints to federal court and not to discover or even effectively litigate such claims once filed with a court, id. at 354; see also Cornett v. Donovan, 51 F.3d 894, 899 (9th Cir. 1995) ("The right of access is designed to ensure that a habeas petition or civil rights complaint of a person in state custody will reach a court for consideration.")  The right "guarantees no particular methodology but rather, the conferral of a capability--the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Lewis, 518 U.S. at 356.  Further, the denial of access is not actionable if there is no claim of prejudice to an existing or future legal action.  Id. at 351-53.  That is, an inmate must establish that he suffered an "actual injury."  See Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994).  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim."  Lewis, 518 U.S. at 348.  In other words, a plaintiff must allege facts to support that a defendant's conduct prevented him from bringing to court a non-frivolous claim that he wished to present.  Id. at 351-53.

Plaintiff alleges that on March 14, 2008, LPCC Policy 14-8 entitled "Inmates Rights" and Policy 14-5, entitled "Grievance Procedure" were established by CCA.  On April 2, 2010, Plaintiff completed a "Confidential Request for Attorney/Paralegal Conference" on

1  Form 14-8A, but "[t]he LPCC failed to process[]" the form. (Doc. 24 at 5.) On May 10,
2  2010, Plaintiff filed a grievance regarding the failure to comply with Policy 14-8 and asserted
3  a denial of due process. Plaintiff received no response. On April 15, 2010, Plaintiff was
4  advised that he would no longer be allowed access to his legal documents prepared on the
5  LPCC computer. On May 5, 2010, Plaintiff filed a grievance regarding that issue. Plaintiff
6  sent all grievances to Defendant Allridge-Williams. Plaintiff asserts that Allridge-Williams:

> has cooperated with other Defendants, DeRosa, Chase, Tapia, Schomig, Young, Miller, Seidl, and Powers in conspiring to deny Plaintiff any avenues to seek resolution of his religious needs and has failed or refused to protect Plaintiff's right to due process under the law, by delaying and or misplacing grievance(s) filed by Plaintiff that appealed decisions of the LPCC administration that denied his right to religious practice and invidious discrimination.

11 (Id. at 5A.) On June 1, 2008, LPCC Policy 20-102 entitled "Chaplain/Religious Services,"
12 was established, but it:

> denies Plaintiff his right to due process. The policy and contract [referred to in Count I] in question are *unduly* arbitrary and capricious and therefore deprive Plaintiff of due process of law. Since the arrival of Plaintiff at LPCC, Defendant(s) DeRosa, Chase, Tapia, Schomig, Young, Miller, and Seidl in their capacities as wardens [sic], have failed or refused to protect Plaintiff's right to due process in his efforts to institute a practice of religious faith. Defendant(s) actions were clearly arbitrary and unreasonable, having no substantial relation to safety or security.

18 (Id.)

19  Plaintiff fails to allege facts to support that anyone denied him the ability to file any
20 contemplated civil litigation in state or federal court or the ability to comply with any filing
21 deadline. Plaintiff clearly has been able to do so in this case. Count III is otherwise vague
22 and conclusory. For the reasons discussed, Count III will be dismissed.

### E.  Employment Discrimination

24  In Counts VI and VII, Plaintiff alleges discrimination in prison job assignments based
25 on his Spanish surname and his religion in violation of Title VII and the Equal Pay Act
26 (EPA). A claim under Title VII may be brought against an employer or prospective
27 employer for discrimination based on an applicant's national origin or his religion. See 42

U.S.C. § 2000(a)(2).[4]  An inmate can be an employee for purposes of Title VII when he is denied employment for impermissible reasons. Baker v. McNeil Isl. Corr. Ctr., 859 F.2d 124, 127-28 (9th Cir. 1988). The Equal Pay Act prohibits an employer from discriminating against an employee based on gender. See Gunther v. Washington County, 623 F.2d 1303, 1309 (9th Cir. 1979).

Plaintiff alleges the following facts in support of Counts VI and VII:  Between May 2004 and June 2008, Plaintiff had a prison job as a chapel porter and clerk at the California Men's Colony in San Luis Obispo. On September 17, 2008, Plaintiff applied to work as a chapel worker at LPCC and has had an application on file since then with Chaplain Powers. While his application was on file, Powers hired other inmates as chapel porters.  On September 25, 2008, Plaintiff met with Powers and discussed the chapel porter position, but Powers told him that all chapel job assignments would be filled by inmates who volunteered in the Protestant religious programs.

Plaintiff's allegation that Powers discriminated against him in prison employment based on his Catholic faith is sufficient to state a claim against her under Title VII in Count VI. Plaintiff otherwise fails to allege facts to state a claim for violation of Title VII based on his Spanish surname or under the EPA. Plaintiff's remaining allegations in Counts VI and VII are insufficient to state a claim against any Defendant and these counts will be dismissed as to any other Defendant.

**F.     Retaliation**

In Count VIII, Plaintiff alleges a claim for retaliation. To state a constitutional claim for retaliation, a plaintiff must allege that a defendant acting under color of state law took adverse action against him because he engaged in protected conduct, that the adverse action was not narrowly tailored to advance legitimate correctional goals, and that the adverse

---

[4] However, Title VII does not prohibit discrimination where religion, national origin, or sex is a bona fide occupational qualification reasonably necessary to the normal operation of a business or enterprise. See Breiner v. Nevada Dep't of Corr., 610 F.3d 1202, 1210 (9th Cir. 2010) (citing 42 U.S.C. § 2000e-2(e)(1)).

- 11 -

1 action chilled the plaintiff's exercise of his First Amendment rights or caused the prisoner
2 to suffer more than minimal harm. Rhodes v. Robinson, 408 F.3d 559, 567-58 (9th Cir.
3 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims
4 requires an inmate must show (1) that the prison official acted in retaliation for the exercise
5 of a constitutionally-protected right, and (2) that the action "advanced no legitimate
6 penological interest"). Inmates have a federal right to petition for redress of grievances and
7 to file suit without being subjected to retaliation. Rhodes, 408 F.3d at 567. Thus, an inmate
8 may state a federal constitutional violation where he alleges that a grievance was denied in
9 retaliation for exercising a constitutionally-protected right, see Bradley v. Hall, 64 F.3d 1276,
10 1279 (9th Cir. 1995), or in retaliation for filing a grievance, Valandingham v. Bojorquez, 866
11 F.2d 1135, 1138 (9th Cir. 1989). Further, although "[t]here is no legitimate claim of
12 entitlement to a [prison] grievance procedure," Mann v. Adams, 855 F.2d 639, 640 (9th Cir.
13 1988), the right of meaningful access to the courts extends to established prison grievance
14 procedures. Hall, 64 F.3d at 1279; Valandingham, 866 F.2d at 1138. The "government" to
15 which the First Amendment guarantees a right to petition for redress of grievances includes
16 prison authorities. Hall, 64 F.3d at 1279 (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d
17 1310, 1314 (9th Cir.1989)).

18 Plaintiff alleges the following facts in support of Count VIII: Since September 2008,
19 he has utilized the established grievance procedure pursuant to LPCC Policy 14-5 seeking
20 redress of conditions, treatment, and policies and procedures affecting his right to exercise
21 his religion. Plaintiff has also attempted to bring his concerns to the attention of authorities
22 outside of LPCC: on December 12, 2008, he sent a letter to CCA's general counsel regarding
23 his concerns; on March 16, 2009, he sent a letter to the Arizona Attorney General; and he
24 corresponded with the Catholic Diocese of Tucson and Father Aguirre of the local Catholic
25 church in Eloy. Plaintiff believes that the "Defendant(s) and all those acting in concert with
26 them" have retaliated against him by issuing "questionable" disciplinary write-ups, waking
27 him up by knocking on his cell door during the night, and by destroying or refusing to allow
28

1 him access to his legal documents on a prison computer. On April 15, 2010, Defendant
2 Delsordi told Plaintiff that he had been ordered by Defendant Young to restrict Plaintiff's
3 access to a prison computer to prepare legal documents. Since June 4, 2010, Delsordi has
4 denied Plaintiff access to his legal documents. Plaintiff otherwise asserts that:

> Defendant(s) CCA, Powers and all those acting in concert with them have denied chapel porter job assignment in retaliation for Plaintiff's commencement of lawsuits. Defendant(s) knew of the violations and failed to act to prevent them and implemented a policy so deficient that the policy is a repudiation of Plaintiffs' [sic] rights. Defendant(s) refused to respond to Plaintiff's grievances and refused to properly train or supervise the other Defendant(s) in retaliation to Plaintiff actions.

9 (Doc. 24 at 5H.)

10 Plaintiff fails to allege *facts* to support that any Defendant retaliated against him for
11 exercising his constitutional rights. Inmates are not constitutionally entitled to access to
12 prison computers and Plaintiff fails to allege facts to support that the denial of such access
13 was in retaliation for filing a lawsuit. Similarly, Plaintiff speculates that he has been issued
14 disciplinary write-ups in retaliation. He fails to describe the circumstances of any write-up
15 or facts to support that such write-up was prepared by a named Defendant in retaliation for
16 filing a lawsuit or exercising his constitutional rights. Plaintiff also fails to allege facts to
17 support that he was not assigned to a chapel porter job in retaliation for filing a lawsuit.
18 Accordingly, Count VIII will be dismissed.

19 **IV.   Claims for Which an Answer Will be Required**

20 In Count I (in part) and IV (in part), Plaintiff alleges that Powers denied him a
21 religious diet during Lent and that in January 2009, Powers denied him permission to use the
22 chapel for Mass because there was no priest with security clearance to lead the Mass and
23 LPCC policy prohibited inmate-led religious services. (Doc. 24 at 3, 3B, 5B.) Powers will
24 be required to respond to these allegations.

25 In Count II (in part), Plaintiff alleges that his right to equal protection was violated by
26 CCA's failure to make Catholic television programming available to inmates while making
27 Protestant television programming available to inmates. He also alleges that De Rosa
28

- 13 -

established LPCC's policy for chaplains and religious services that provided the basis for Powers denying his requests for a religious diet during Lent, while authorizing religious diet requests to inmates of other faiths. The Court will require CCA, De Rosa, and Powers to respond to these portions of Count II.

In Count VI (in part), Plaintiff alleges that Powers violated Title VII by refusing to hire him for a chapel porter position based on his Catholic faith. Liberally construed, Plaintiff alleges an equal protection violation in this part of Count VI. Powers will be required to respond to this portion of Count VI.

## V.    Warnings

### A.    Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

### B.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C.    Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these

1 warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet,
2 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to
3 comply with any order of the Court).

4 **IT IS ORDERED:**

5 (1)   Plaintiff's motion for reconsideration is **granted** to the extent that judgment
6 entered on August 9, 2010 is **vacated**.  (Doc. 27.)

7 (2)   Defendants Mayberry, Chase, Tapia, Schomig, Miller, Seidl, Young, Roberts,
8 Delsordi, and Allridge-Williams and Counts I (in part), II (in part), III, IV (in part), V, VI (in
9 part), VII, and VIII are **dismissed** without prejudice.

10 (3)   Defendants CCA, De Rosa, and Powers must answer Counts I (in part), II (in
11 part), IV (in part), and VI (in part).  (Doc. 24.)

12 (4)   The Clerk of Court must send Plaintiff a service packet including the Second
13 Amended Complaint (Doc. 24), this Order, and both summons and request for waiver forms
14 for Defendants CCA, De Rosa, and Powers.

15 (5)   Plaintiff must complete and return the service packet to the Clerk of Court
16 within 21 days of the date of filing of this Order.  The United States Marshal will not provide
17 service of process if Plaintiff fails to comply with this Order.

18 (6)   If Plaintiff does not either obtain a waiver of service of the summons or
19 complete service of the Summons and Second Amended Complaint on a Defendant within
20 120 days of the filing of the Complaint or within 60 days of the filing of this Order,
21 whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ.
22 P. 4(m); LRCiv 16.2(b)(2)(B)(I).

23 (7)   The United States Marshal must retain the Summons, a copy of the Second
24 Amended Complaint, and a copy of this Order for future use.

25 (8)   The United States Marshal must notify Defendant of the commencement of this
26 action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal
27 Rules of Civil Procedure.  The notice to Defendant must include a copy of this Order.  The

28

Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons. If a waiver of service of summons is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) **A Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10) Each Defendant must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

/ / /

1    (12)    This matter is referred to Magistrate Judge Michelle H. Burns pursuant to Rules
2 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized
3 under 28 U.S.C. § 636(b)(1).

4    DATED this 22nd day of November, 2010.

Mary H. Murguia
United States District Judge